IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGEL M. ORTIZ MOLINA

    Plaintiff

v.

MAI DEL CARIBE, INC., et. al.

    Defendants

Civil No. 96-2267(SEC)

ADA

## OPINION AND ORDER

Pending before the Court is a motion for summary judgement filed by defendant MAI del Caribe, Inc. **(Docket # 50)** and its concomitant opposition filed by plaintiff Angel Ortiz-Molina **(Docket # 51)**. Upon careful consideration of the parties' arguments and the applicable law, MAI's motion for summary judgement is **GRANTED**.

### I.   Factual Background

This is a suit brought by plaintiff Angel M. Ortiz-Molina ("Ortiz-Molina") against defendant MAI del Caribe, Inc. ("MAI") and its insurance company, for employment discrimination under the provisions of section 107(e) of the American with Disabilities Act (hereinafter "ADA"), 42 U.S.C.A § 12117. This court's jurisdiction attached after the plaintiff filed a charge of employment discrimination at the Equal Employment Opportunity Commission ("EEOC") within 180 days of his dismissal from MAI. The plaintiff received a notification of the right to sue and he filed the present action within 90 days of such notice, all in compliance with the provisions of § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e-5.

Plaintiff Ortiz-Molina is a citizen of the United States and resident of Puerto Rico. MAI is a corporation engaged in the sale and installation of computer systems in Puerto Rico. Plaintiff

**Civil No. 96-2267(SEC)**                                                                                                                  2

Ortiz-Molina started working at MAI on August of 1984. He began as Technical Trainee in the Customer Engineering Department and after he completed his training, he was assigned to the area of Field Transfer as Customer Engineer. He remained in this position until 1990 when he was promoted to the position of Field Manager. As a Field Manager, he headed all the operations of the Engineering Department related with the customers.

On October 5, 1992, Ortiz-Molina suffered a work related accident as a result of which he was assigned a 10% disability of his physiological functions by the State Insurance Fund (hereinafter "SIF"). In June 24, 1994, the SIF increased Ortiz-Molina's disability percentile to 20%. He was diagnosed with a lumbo-sacral strain, HNP L5-SI and left radiculopathy. His ability to lift weights was limited to 25 pounds.

Ortiz-Molina alleges in the complaint that he was subjected to unlawful discrimination, since he was "demoted" on January 31, 1994. The factual grounds that allegedly support his argument are: (1) that on January 31, 1994 his superiors at MAI removed him from his position as Field Manager and reassigned him to the position of Technical Specialist in the Customer Engineering Department; (2) as a Technical Specialist, Ortiz-Molina was required to lift weights heavier than his limit of 25 pounds; (3) afterwards, plaintiff was dismissed from his job as part of an alleged reduction in personnel that was carried out without observing seniority. While he was discharged from his job, one of plaintiff's co-workers who had less seniority than him, Mr. Francisco Buso, was not dismissed.

MAI rebuts plaintiff's allegations of discrimination under ADA in several ways. First, MAI alleges that Ortiz-Molina is not a "qualified" disabled individual under ADA, because his illness does not substantially limit any major life activity. Second, MAI alleges that this is a reduction in

**Civil No. 96-2267(SEC)**                                                                                                                    3

force case and that plaintiff failed to establish that a discrimination occurred within this context. Third, MAI alleges that plaintiff's allegations of discrimination are time-barred since a complaint was not filed with the Equal Employment Opportunity Commission ("EEOC") regarding MAI's revocation of plaintiff's accommodations, as soon as the plaintiff was required to lift weights in excess of 25 pounds. Fourth, MAI alleges that plaintiff's dismissal was within the parameters of the Puerto Rico Unjust Dismissal Act, 29 L.P.R.A. § 181(a) et. seq., which requires that a reduction in force shall be performed by seniority within the employee occupational classification. MAI asserts that it complied with the requirements of said law, since no other employees in plaintiff's classification were retained, and plaintiff was not replaced after his dismissal. Finally, MAI requests that the Court also dismiss plaintiff's supplemental state claims.

**II.   Analysis of Applicable Law**

    **A.   Summary Judgement Standard**

The First Circuit has recently noted: "[s]ummary judgement has a special niche in civil litigation. Its role is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S.Ct. 1845 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources. McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

According to Fed. R. Civ. P. 56(c), a summary judgement motion should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

**Civil No. 96-2267(SEC)** 4
---

is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c). See also NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28 (1st Cir. 1994). It is not enough to conjure up an alleged factual dispute between the parties; to defeat summary judgement, there must exist a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. U.S. v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992). See also, Boston Athletic Assn. v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. Morris v. Government Development Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994).

In determining whether to grant summary judgement, the Court may not, however, weigh the evidence. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgement "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greenburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgement may not adopt the inference least favorable to the non-moving party. Casas Office Machines, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case," Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1984); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." Lawton v. State Mutual Life Assurance Company of America, 101 F.3d 218, 223 (1st Cir. 1996). Furthermore, "'the nonmovant must produce specific

**Civil No. 96-2267(SEC)**                                                                                                                       5

facts, in suitable evidentiary form' sufficient to limn a trialworthy issue... Failure to do so allows the summary judgement engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgement proponent to configure the record is likely to prove fraught with consequence.")

The uncontroverted material facts before the Court indicate that during the years precedent to 1994, MAI had been experiencing a phased reduction in force due to market changes. In August of 1994, this reduction in force led to the termination of Ortiz-Molina from his position at MAI.

The documents submitted by the parties in support of their motions demonstrate that on December 20, 1993, Mr. Pedro Boza was hired as MAI's C.E. Manager. As such he was Ortiz-Molina's direct supervisor. During January of 1994, Mr. Pedro Boza undertook a reorganization of the Engineering and Programing Departments. As a result of said reorganization, on January 31, 1994, Ortiz-Molina was assigned additional responsibilities that included being in charge of the library and coordinate the field work. In addition, he received a salary increase.

Plaintiff avers that as a result of said reorganization he was demoted, because the name of his new position was "Technical Specialist," when he previously had been a "Field Manager". However, the Court finds that Ortiz-Molina did not provide sufficient evidence to support his contention that he was "demoted" as a result of the January 31, 1994 reorganization; because the uncontroverted facts remain that he retained his old functions and in addition, he was entrusted with new responsibilities and received a salary increase.

In addition, on May 13, 1994—almost four months after Ortiz-Molina became a "Technical Specilist"—, Mr. Ramón E. Robles, Rehabilitation Specialist from the SIF met with Mrs. Mayra Robles, MAI's Comptroller, and he determined that Mr. Ortiz-Molina "is a Supervisor and [...] his

Civil No. 96-2267(SEC)          6

functions do not entail lifting, moving or carrying heavy objects." (Docket #50, Defendant's Exhibit #1).

### B.    American with Disabilities Act Claim

The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. §§ 12101, et. seq., is a federal law "intended to extend the basic duties and privileges of the Rehabilitation Act of 1973 to all except the smallest employers, to all state and local entities, and to most private sector establishments serving the public." Henry H. Perritt, Jr., Americans with Disabilities Act Handbook § 1.2 (3rd ed. 1997). Its Title I regulates the employment in general of disabled persons. It is, in the words of Henry H. Perritt, Jr.: "the most significant labor and employment legislation in a decade,"Id. § 1.1.

To prove that an employer violated Title I of ADA, the plaintiff must prove: "(1) That the plaintiff is a '**qualified individual**;' (2) With a '**disability**;' and (3) That the plaintiff was **excluded from the position sought** *because of the disability*" Id. § 3.2 (emphasis supplied); See 42 U.S.C.A. 12112(a); Quint v. A.E. Staley Manufacturing Co., 172 F.3d 1, n.3 (1st Cir. 1999) quoting Criado v. IBM Corp., 145 F.3d 437, 441 (1st Cir. 1998). "Qualified Individual with a Disability" is: "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8).

Under ADA, a "disability" is: "a physical or mental impairment that substantially limits one or more of the major life activities of [an] ... individual" 42 U.S.C.A. § 12102(2)(A). A "physical or mental impairment" under the act is: "(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory..., cardiovascular, reproductive, digestive, genito-

AO 72A
(Rev. 8/82)

**Civil No. 96-2267(SEC)**                                                                                                                    7

urinary, hemic and lymphatic, skin, and endocrine," 29 C.F.R. § 1630.2(h). Clearly, plaintiff's illness is of a nature to qualify as a "physical or mental impairment", but does not by itself amount to a "disability" under ADA.

In this case, plaintiff alleges that his lifting impairment qualifies as a "disability" under ADA, because it "substantially limits" the "major life activity of working". However, the plaintiff does not provide to the Court any specific legal basis to arrive at that conclusion. Conversely, the defendant alleges on his motion for summary judgement that Ortiz-Molina is not a "qualified individual with a disability" precisely because his illness does not "substantially limit" any "major life activity". In particular, MAI invokes caselaw bearing on the high standards that must be satisfied in order to support a finding that a particular physical impairment substantially limits the employee's "major life activity of working". The defendant argues that plaintiff Ortiz-Molina's impairment fails to meet those standards.

In this regard, the First Circuit Court of Appeals has stated that: "An ADA claimant assumes a more fact-specific burden of proof in attempting to demonstrate that her impairment 'substantially limits' the major life activity of 'working'." Quint, 172 F.3d at 11. The Equal Employment Opportunity Commission ("EEOC") has established that: "[S]ubstantially limits means **significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.** The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3).

To demonstrate that the claimant is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes" the following factors may be considered:

**Civil No. 96-2267(SEC)**                                                                 8

    (A) The geographical area to which the individual has reasonable access;
    (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of an impairment (class of jobs); and/or
    (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

    In this case, it is an uncontroverted fact that plaintiff Ortiz-Molina has an impairment in lifting that limited his physiological functions at the time he was dismissed from MAI by 20%, according to the SIF. This impairment was diagnosed as a lumbo-sacral strain, HNP L5-SI and left radiculopathy. The effect of this ailment was a limitation on plaintiff's ability to lift weights to 25 pounds. However, these facts alone, are not enough to support a finding that plaintiff's illness amounts to a disability that substantially limits his capacity to work. In fact, plaintiff has failed to produce any evidence to support a finding that this illness satisfies the requirements of 29 C.F.R. § 1630.2(j)(3), and instead he has simply rested on the assertion that he has a physical impairment and that he is therefore disabled within the meaning of ADA. In addition, plaintiff's legal memorandum is devoid of precedents to support his contentions based on the facts that are now before the Court. Therefore, the Court is compelled to find that plaintiff's "lifting impairment" does not substantially limit the major life activity of working; Lawton, 101 F.3d at 223 ("[T]he nonmovant has [the] corresponding obligation to offer the court more than steamy rhetoric and bare conclusions. This principle is accentuated where... a Rule 56 motion targets an issue on which the nonmoving party

**Civil No. 96-2267(SEC)** 9

must carry the devoir of persuasion. In that setting, the nonmovant must 'produce specific facts, in suitable evidentiary form,' sufficient to limn a trialworthy issue.").

Although the following issue was not discussed by Ortiz-Molina on his legal memorandum, the Court notes that in appropriate circumstances, lifting by itself can constitute a "major life activity" for purposes of ADA.[1] The Court is inferring that lifting could be included within the term "major life activity" in 42 U.S.C.A. § 12102(2)(A) because of legislative history that indicates that it was the legislature's intention that it should be so included; Senate Report at 22; House Labor Report at 52; House Judiciary Report at 2; <u>cited by</u> 29 C.F.R. App. to pt. 1630 (commentary on § 1630.2(i)). However, the Court notes that the First Circuit has declined the opportunity to take an express position on this issue, although it recognized that lifting *may be* a major life activity for ADA purposes, <u>Quint v. A.E. Staley Manufacturing Co.</u>, 172 F.3d at 10. Within the First Circuit, the Maine District Court expressly admitted lifting as a category within the concept "major life activities", <u>Ridge v. Cape Elizabeth School Dept.</u>, __F.Supp.2d__ (Opinion of October 27, 1999, D. Me.); 1999 WL 1068270, at 6; and the Puerto Rico District Court has recognized that: "[I]n some cases, lifting itself may be a major life activity" <u>Cruz v. McAllister Brothers, Inc.</u>, 52 F.Supp.2d 269, 280 (DPR 1999).

Other circuits have recognized lifting as a major life activity for ADA purposes; <u>Williams v. Channel Master Sattelite Sys., Inc.</u>, 101 F.3d 346, 349 (4th Cir. 1996); <u>Ray v. Glidden</u>, 85 F.3d

---

[1] "'Major life activities' are those basic activities that the average person in the general population can perform with little or no difficulty. [They] include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. This list is not exhaustive. For example, **other major life activities include, but are not limited to, sitting, standing, lifting, reaching.**" 29 C.F.R. App. to pt. 1630 (commentary on § 1630.2(i)), <u>citing</u> Senate Report at 22; House Labor Report at 52; House Judiciary Report at 2; Robert L. Burgodorf Jr., <u>Disability Discrimination in Employment Law</u> 134 (1995).

**Civil No. 96-2267(SEC)**                                                                                       10

227, 229 (5th Cir. 1996); Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997); Gutridge v. Clure, 153 F.3d 898, 901 (8th Cir. 1998); Thompson v. Holy Family Hosp., 121 F.3d 537, 540 (9th Cir. 1997).

Admitting then, that lifting could constitute a major life activity for ADA purposes, the threshold inquiry is then, whether plaintiff's physical impairment, "substantially limits" this major life activity of lifting. In this regard, "[t]he impairment must be measured in comparison with normal people." Perrit, supra at 43. The concept "substantially limits" means: "(i) Unable to perform a major life activity that *the average person* in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which *the average person in the general population* can perform the same major life activity," 29 C.F.R. § 1630.2(j)(1). The following factors should be examined for purposes of determining "whether an individual is substantially limited in a major life activity: (i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of[,] or resulting from[,] the impairment," 29 C.F.R. § 1630.2(j)(2).

The Court has determined that "in comparison with *the average person* in the general population," plaintiff's illness is not *per se* a disability under ADA. Caselaw on point indicates that "[plaintiff] can lift and reach as long as he avoids heavy lifting... Inability to perform that discrete task [of lifting 44-56 pound containers continuously all day] does not render a person substantially limited in a major life activity." Ray v. Glidden, 85 F.3d 227, 229 (5th Cir. 1996). "[W]hile lifting is noted under the regulations as a major life activity, a general lifting restriction imposed by a

**Civil No. 96-2267(SEC)**                                                                                                           11

physician, without more, is insufficient to constitute a disability within the meaning of ADA." Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997) quoted by Gutridge v. Clure, 153 F.3d 898, 901 (8th Cir. 1998). "As a matter of law... a 25 pound lifting limitation 'does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity'." Thompson v. Holy Family Hosp., 121 F.3d 537, 540 (9th Cir. 1997) citing Williams v. Channel Master Sattelite Sys., Inc., 101 F.3d 346, 349 (4th Cir. 1996). These precedents thus overwhelmingly indicate that for a lifting limit to constitute a disability under ADA, it must be a severe, permanent restriction that **substantially limits the employee/plaintiff's ability to "to lift and reach" in general,** Thompson, supra. Plaintiff Ortiz-Molina's lifting limitations do not satisfy this test, therefore, his claims under ADA are hereby **DISMISSED**.

**C.    Plaintiff's Supplemental Claims**

As to the pending pendent jurisdiction claims in the present case, it is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. See 28 U.S.C. §1367; United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Nevertheless, where, as here, all federal claims warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

It has been stated that the holding in Gibbs "seems to clearly require dismissal without action on the merits and without any exercise of discretion if all the federal claims ... are found to be short of trial, deficient." Snowden v. Millinocket Regional Hosp., 727 F.Supp. 701, 709 (D.Me. 1990). Such a result is warranted in view that "[t]he power of a federal court to hear and to determine state-

**Civil No. 96-2267(SEC)**                                                                                                     12

law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the law suit." Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991).

Although District Courts are not obliged to dismiss pendent state law claims, in the usual case in which all federal law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine --judicial economy, convenience, fairness and comity-- will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.5 (1988); citing Gibbs, 383 U.S. at 726-27; see also Mercado-Garcia v. Ponce Federal Bank, 979 F.2d 890, 896 (1st Cir. 1992); Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992); Figueroa Ruiz v. Alegria, 896 F.2d 646 (1st Cir. 1990); cf. Vega v. Kodak Caribbean, 3 F.3d 476, 478 (1st Cir. 1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"); Feinstein v. Resolution Trust Corp., 942 F.2d 34, 47 (1st Cir. 1991) (stating that "since federal question jurisdiction hinged on that [dismissed] count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jurisdiction in the district court, the pendent state law claims were properly dismissed under the rule of United Mine Workers v. Gibbs").

Supplemental jurisdiction should be declined in this case in view that the state law claims substantially predominate over the federal claims. The Supreme Court has held that judicial economy, convenience, fairness and comity favors "a decision to relinquish jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." Carnegie-Mellon, 484 U.S. at 350 n.5, citing Gibbs, 383

**Civil No. 96-2267(SEC)** 13

U.S. at 726. Since plaintiff is not entitled to any award under the ADA, the only award plaintiff could, in any event, pursue would be under state tort law, such as Law 80 for unjust dismissal.

In view of the above discussion, defendant MAI's motion for summary judgement is **GRANTED (Docket # 50)** and plaintiff's complaint is hereby **DISMISSED**. We also decline to exercise jurisdiction over plaintiff's remaining state claims against defendant. Judgement shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this ___ day of February, 2000.

SALVADOR E. CASELLAS
United States District Judge